IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NELSON BARRERA RUIZ,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:18-CV-2707-L** |
| | § | |
| **BANK OF AMERICA, N.A. and** | § | |
| **PENNYMAC LOAN SERVICES, LLC,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment ("Motion") (Doc. 15), filed May 7, 2019. After considering the Motion, briefs, competent summary judgment evidence, and applicable law, the court **grants** Defendants' Motion for Summary Judgment (Doc. 15) and **dismisses with prejudice** this action and all claims and requests for relief asserted and sought by Plaintiff. Also before the court is the Unopposed Motion to Continue Trial and Remaining Deadlines (Doc. 29), which the court **denies as moot** in light of its ruling on Defendants' Summary Judgment Motion.

## I.    Factual and Procedural Background

Nelson Barrera Ruiz ("Ruiz" or "Plaintiff") originally brought this action in state court on October 1, 2018, after Bank of America, N.A. ("BOA") and PennyMac Loan Services, LLC ("PennyMac") (collectively, "Defendants") attempted to foreclose on residential property ("Property") that he purchased in July 2003 via a home mortgage loan ("Note"). The Note is secured by a Deed of Trust and lists Shelter Mortgage Company, L.L.C. ("Shelter Mortgage") as the lender. Ruiz admits to not making one or more payments on the Note in 2016, 2017, and 2018, and

**Memorandum Opinion and Order - Page 1**

Defendants presented undisputed evidence that he has not made payments on the Note since defaulting in October 2015. Ruiz, nevertheless, contends that Defendants' conduct and attempts at accelerating the Note and initiating foreclosure proceedings violate Texas law and the Deed of Trust because they lacked authority to do so. In August 2017, Ruiz initiated a Chapter 13 bankruptcy proceeding after BOA accelerated the debt owed on the Note the first time. Ruiz listed PennyMac as a secured creditor in the bankruptcy proceeding, which was dismissed in February 2018 as result of his failure to file a Chapter 13 plan as ordered. Only July 26, 2018, after dismissal of the bankruptcy proceeding, Defendants again accelerated the indebtedness under the Note and sent Plaintiff a written notice of the acceleration and foreclosure sale scheduled for October 2, 2018.

On October 1, 2018, Plaintiff filed this action in state court and obtained a temporary restraining order ("TRO") to prevent Defendants from foreclosing on the Property. A hearing was also scheduled for October 16, 2018, to determine whether the TRO should be converted into a "temporary injunction" during the pendency of the case. Defs.' Notice of Removal, Ex. C-5. Prior to that hearing date, the action was removed to federal court by Defendants on October 12, 2018, based on diversity jurisdiction. On October 11, 2018, Defendants also filed their Original Answer, which includes a general denial and a number of affirmative defenses, including the defense of estoppel. Regarding this defense, Defendants contend that Ruiz is judicially estopped from contesting the validity of the lien on the Property because he listed the lien held by PennyMac in his bankruptcy schedule of secured claims.[1]

---

[1] Although Defendants moved for summary judgment on their affirmative defense of judicial estoppel, the court does not address it, as it determines that Defendants are entitled to summary judgment as a result of Plaintiff's failure to identify evidence sufficient to raise a genuine dispute of material fact with respect to the elements of his own claims in response to Defendants' summary judgment motion. His claims based on lack of capacity also fail as a matter of law.

In Plaintiff's Original Petition ("Petition"), the live pleading, Ruiz asserts claims against Defendants for alleged violations of the Texas Property Code and Texas Debt Collection Act ("TDCA").  In the alternative, Ruiz asserts a cause of action for breach of contract against Defendants for allegedly breaching the Deed of Trust.  For relief, Ruiz seeks a declaratory judgment quieting title to the Property and declaring that Defendants' conduct in violating the TDCA voided the Deed of Trust securing payment on his loan, in addition to "[a]ny substitute trustee's deed to the Property executed pursuant to a substitute trustee's sale of October 2, 2018[,] and any other substitute trustee's sale, any conveyance since any such sale, and any other deed executed by or on behalf of any substitute trustee." Pl.'s Orig. Pet. 9.

In other words, Ruiz seeks to avoid his obligations under the Note and Deed of Trust.  He also seeks actual damages, exemplary damages, attorney's fees, costs, prejudgment and postjudgment interest, as well as injunctive relief that: (1) bars Defendants from initiating any forcible detainer or foreclosure proceeding with respect to the Property: (2) prevents the transfer of "any interest in his homestead Property"; (3) enjoins Defendants from committing further violations of the TDCA; and (4) stays any foreclosure proceeding outside of this case, whether by Defendants or others who are not parties to this action.  *Id.* at 8.

Most, if not all, of the claims asserted and the relief sought by Ruiz in this action stem from his contention that Defendants' conduct in attempting to foreclose on the Property, sending foreclosure notices, and attempting to collect "interest or a charge, fee, or expense incidental to the Note" violated the TDCA and the Texas Property Code because they lacked the necessary capacity or authority under Texas law as a mortgagee or mortgage servicer to foreclose on the Property.  *Id.* at 5.  Ruiz also contends that Defendants violated the TDCA, Texas Property Code,[2] and Deed of

---

[2] More precisely, Ruiz alleges violations of sections 51.002(b), 51.002(d), and 51.0025(2) of the Texas Property Code and sections 392.301(a)(8), 392.303(a)(2), and 392.304(a)(8) and (19) of the Texas Finance Code.

**Memorandum Opinion and Order - Page 3**

Trust by failing to give the notice in the form and manner required by the Texas Property Code and Deed of Trust, failing to properly account for payments he made on the Note, misrepresenting the status of the outstanding debt on the Note, and collecting or attempting to collect unauthorized interest or other charges.

On May 7, 2019, Defendants moved for summary judgment on all of Plaintiff's claims and requests for relief, and submitted evidence in support of their Motion. Defendants rely on the following grounds to establish their entitlement to judgment as to all of Plaintiff's claims: (1) "Defendants have authority to foreclose as both mortgagee and mortgage servicer"; (2) "Plaintiff lacks standing to challenge the assignment"; (3) "Defendants did not violate Texas Finance Code § 392.301(a)(8) because they provided all required foreclosure notices to Plaintiff and . . . had the authority to do so"; (4) "Defendants did not violate Texas Finance Code § 392.303(a)(2) because they did not collect or attempt to collect improper interest or fees"; (5) "Defendants did not violate Texas Finance Code § 392.304(a)(8) or (19) because they properly applied payments to the Loan and did not misrepresent the status of the Loan"; (6) "[the] Texas Property Code does not give rise to a private right of action"; (7) "Defendants complied with the Texas Property Code"; (8) "Plaintiff's breach of contract claim fails because Plaintiff has not properly alleged a breach and/or a contractual provision that was breached"; (9) "Plaintiff's breach of contract claim also fails because Plaintiff has not been damaged"; and (10) Plaintiff's request for declaratory and injunctive relief and attorney's fees fails because he has not asserted any viable underlying causes of action.

Plaintiff contends that Defendants' summary judgment evidence does "not negate any essential element of [his] claims" and fails to establish that they have the requisite capacity or authority to foreclose on the Property. Pl.'s Resp. 2 (Doc. 21); Pl.'s Resp. Br. 2-3 (Doc. 22).

Plaintiff further asserts that Defendants' evidence establishes all of the elements of at least one of his TDCA claims. In addition, Plaintiff contends that discovery will establish the exact amounts charged to his account, and discovery may establish that the transfers or assignment(s) of the Note and Deed of Trust were invalid, such that the notices of default, acceleration and foreclosure were ineffective for lack of capacity. Plaintiff, therefore, contends that Defendants are not entitled to summary judgment on any of his claims.

## II.      Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden

of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Discussion

####    A.    Texas Property Code

Defendants argue that Texas law does not recognize a private cause of action for violations of the Texas Property Code.  Plaintiff, rather than disputing this argument, clarifies that he is not asserting a cause of action under the Texas Property Code, and that Defendants' alleged violations of Chapter 51 of the Texas Property Code, instead, provide the bases for his TDCA and breach of contract claims.  Pl.'s Resp. Br. 7.  In light of the foregoing acknowledgment or clarification, the court determines that Plaintiff has abandoned or waived any cause of action for relief under the Texas Property Code and **dismisses with prejudice** all such claims without addressing whether any such cause of action is recognized under Texas law.  Additionally, the court will only evaluate Plaintiff's contentions regarding the Texas Property Code in determining whether Defendants are entitled to summary judgment on his TDCA and breach of contract claims.

####    B.    Breach of Contract

Plaintiff's contract claim is based on his contention that Defendants: (1) failed to provide the notice required by the Deed of Trust and Texas Property Code §§ 51.002(b) and (d) in connection with the threatened foreclosure sale and acceleration of the debt under the Note; and (2) lacked the legal capacity as the mortgagee or mortgage service to provide such notice.  Pl.'s Orig. Pet. ¶ 7(A)-(B).

The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

Defendants moved for summary judgment on the fourth damages element, contending there is no evidence that Ruiz suffered any damages as a result of conduct that he contends breached the Deed of Trust.  Defendants also contend that they have the requisite capacity and provided all required notices.  In response, Ruiz continues to maintain that he has asserted a viable breach of contract claim for "violations of 'applicable law' under the Deed of Trust."  Pl.'s Resp. Br. 7.  As correctly noted by Defendants, however, Ruiz failed to address their contention regarding breach of contract damages or point to evidence of such damages.[3]  Accordingly, Plaintiff has failed to raise a genuine dispute of material fact that he sustained damages as a result of the conduct that he contends breached the Deed of Trust, and Defendants are entitled to judgment, as a matter of law, on Plaintiff's breach of contract claim.

### C.    TDCA

Ruiz contends that he is entitled to relief under the TDCA as a result of Defendants' violations of sections 392.301(a)(8), 392.303(a)(2), and 392.304(a)(8) and (19) of the Texas Finance Code.  Section 392.301(a)(8) of the TDCA prohibits a debt collector from using "threats, coercion, or attempts to coerce" that involve "threatening to take an action prohibited by law." Tex. Fin. Code Ann. § 392.301(a)(8).  Section 392.303(a)(2) prohibits debt collectors from using unfair or unconscionable means such as "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless [the fee] is expressly authorized by the agreement

---

[3] Ruiz cites to pages 19 through 57 of Defendants' summary judgment appendix, contending that discovery will establish the exact amounts of the unlawful charges. Pl.'s Resp. Br. 8.  This portion of Ruiz's summary judgment response, however, pertains to his TDCA claim under § 392.303(a)(2) regarding unauthorized charges, not his contract claim, which is based solely on lack of notice and lack of capacity to provide notice. Thus, this evidence does not establish, or raise a genuine dispute, that he sustained damages as a result of Defendants' alleged failure to provide notice that complied with §§ 51.002(b) and (d) or their authority to do so.  Additionally, although Ruiz's Original Petition is verified, it contains no factual allegations regarding contract damages.

creating the obligation or legally chargeable to the consumer." *Id.* § 392.303(a)(2). Section 392.304(a)(8) prohibits debt collectors from using fraudulent, deceptive, or misleading representations that misrepresent "the character, extent, or amount of consumer debt." *Id.* § 392.304(a)(8). Section 392.304(a)(19) is a catch-all provision that prohibits a debt collector from "using any other false representation or deceptive means to collect a debt." *Id.* § 392.304(a)(19).

### 1. Bases for Plaintiff's TDCA Claims

Ruiz's TDCA claims stem from Defendants' conduct in threatening to sell his Property in a foreclosure sale through the appointment of a substitute trustee. Ruiz contends that Defendants violated § 392.301(a)(8) by threatening to take or taking the following actions in connection with the threatened substitute trustee's sale of the Property, which he contends are prohibited by law:

(1)    Defendants failed to give notice before giving notice of acceleration and substitute trustee's sale, in the form and manner, and with the **legal capacity** at the time of giving such notice(s), to comply with Texas Property Code § 51.002(d), and/or wrongfully gave such notice due to **lack of capacity at the time of any such notice**;

(2)    . . . Defendants gave one or more notices of sale that failed to comply with the requirements of the Texas Property Code § 51.002(b) . . . because of the lack of proper preceding notices under Texas Property Code § 51.002(d).

Pl.'s Orig. Pet. ¶ 5(a) (emphasis added). In addition, Ruiz asserts:

Defendants foregoing attempts [described in paragraph 5 of his Original Petition] to foreclose the claimed lien on the Property in the notices predicate [sic] to the nonjudicial foreclosure sale(s) were each a violation of Texas Property Code §[§] 50.002(d) and (b), in that there was **not proper capacity for the giving of the several respective notices**, thereunder, nor for the threatened foreclosure. Specifically, Defendants threatened to take and/or did take several actions prohibited by law related to the threatened October 2, 2018 substitute trustee's sale(s) of the Property, in that:

A.    Defendant failed to give notice before giving notice of acceleration and substitute trustee's sale, in the form and manner, and with the

> **legal capacity** at the time of giving such notice(s), to comply with
> Texas Property Code § 51.002(d);
>
> B.  . . . Defendants gave one or more notices that failed to comply with
> the requirements of Texas Property Code § 51.002(b), including
> because of **lack of capacity** to give such notice(s) at the time each
> such notice was given, since such notices were not preceded by valid
> notices under § 51.002(d).

Pl.'s Orig. Pet. ¶ 6(A)-(B) (emphasis added).

Regarding his claim under § 392.303(a)(2), Plaintiff contends that Defendants collected or attempted to collect from him "interest or a charge, fee, or expense incidental to the Note . . . [that] was not expressly authorized by the Deed of Trust and/or Note and legally chargeable to Plaintiff by:

> (1)  fail[ing] to properly account for and acknowledge payments made and
> consequently has demanded payment from Plaintiff of sums in excess of
> those permitted under the Note and Deed of Trust, specifically related to the
> predicate notices to the trustee's sale; and
>
> (2)  threaten[ing] to conduct one or more substitute trustee's sales of the Property,
> and thus to deprive Plaintiff of title, use and possession of the Property
> thereby.

Pl.'s Orig. Pet. ¶ 5(b).

Finally, Ruiz contends that Defendants violated sections 392.304(a)(8) and (19) directly or through others by using "deceptive acts or practices and misrepresent[ing] the status of a debt and/or ma[king] a fraudulent representation" to him with the intent that he would rely on the misrepresentation. Specifically, Plaintiff asserts that:

> (1)  Defendants, for themselves and/or for an unknown third party, failed to
> properly account for and acknowledge payments made, and as a result of
> wrongful acceleration of the Note ha[ve] refused to recognize and abide by
> the terms of the Note and Deed of Trust;

(2)  Defendants demanded Plaintiff pay one or more sums above the amounts provided by the Note and Deed of Trust and/or that were not owed to Defendants related to foreclosure activity.

Pl.'s Orig. Pet. ¶ 5(c).  In addition to all of the foregoing matters, Ruiz contends, without identifying any particular section of the TDCA, that Defendants did not have authority or lacked the capacity under the Texas Property Code and Texas common law for the actions they took in connection with the threatened foreclosure sale of his Property:

> Given all the record in the Official Public Records of the Clerk of Dallas County, Texas, it would appear that [BOA] **does not have the clear capacity** as "mortgagee" [under section 51.001 of the Texas Property Code] to appoint substitute trustees or to effect a foreclosure sale of the Property, nor can PennyMac claim status as "mortgage service" to take any similar actions. Therefore, there is **no authority** for Defendants to have threatened and/or to conduct a trustee's sale of the Property on October 2, 2018[,] or otherwise, or to issue any deed thereafter. **Capacity** to effect a nonjudicial foreclosure sale is no less important than standing to seek to effect a judicial foreclosure sale, and **without proper capacity** on the part of the trustee to effect such sale, neither Defendants nor any third party can claim to be a good faith purchaser of the Property at a substitute trustee's sale[.] . . . Defendants' and the substitute trustee's status (or lack thereof) with respect to the Loan at each critical time should be definitively adjudicated by this Court, and any trustee sale effected set aside.

Pl.'s Orig. Pet. ¶ 4(F) (emphasis added).  Ruiz maintains that Defendants lacked capacity to foreclose because there is no evidence that the persons who executed the assignments of the Deed of Trust and Appointment of Substitute Trustee had authority to do so.

### 2.  Capacity-Based Claims

Defendants move for summary judgment on all of Plaintiff's capacity-based claims, contending that they have and had, at the time in question, authority to foreclose on the Property. Defendants assert that this authority derives from the May 9, 2012 assignment of the Deed of Trust from Mortgage Electronic Registration Systems, Inc. ("MERS") to BOA and their status as mortgagee and mortgage servicer under Texas Property Code §§ 51.0025(3)-(4). Defendants contend

that the following summary judgment evidence establishes their authority as mortgagee and mortgage servicer to engage in the conduct that forms the bases for Plaintiff's claims: (1) a certified copy of the Deed of Trust, dated July 30, 2003, that lists MERS as the beneficiary and nominee for lender Shelter Mortgage and its successors and assigns; (2) a certified copy of the recorded assignment of the Deed of Trust from MERS to BOA, dated May 9, 2012; (3) a declaration from PennyMac Foreclosure Operations Supervisor, Johnny Morton ("Morton"), who states that PennyMac is the mortgage servicer for Plaintiff's loan, that Ruiz was provided written notice of the transfer in mortgage servicer to PennyMac on October 12, 2016, and that Ruiz has not made payments on the Note since defaulting in October 2015; (4) Ruiz's discovery responses admitting that he defaulted on his mortgage payments before the debt under the Note was accelerated and foreclosure proceedings were initiated; (5) a copy of the October 12, 2016 letter from BOA to Ruiz, notifying that PennyMac would be servicing his loan starting November 1, 2016; (6) a copy of the loan history that includes payments made on the Note; (7) a copy of the Appointment of Substitute Trustee; and (8) copies of the written notices provided to Plaintiff in 2016 and 2018. Defendants also contend that Plaintiff lacks standing to challenge the validity of the assignment from MERS to BOA based on the reasoning in *Reinagel v. Deutsche Bank National Trust Company*, 735 F.3d 220 (5th Cir. 2013).

Ruiz disagrees and contends that he can challenge the validity of the Assignment of the Deed of Trust from MERS to BOA and the Appointment of Substitute Trustee, as well as the validity of the notices provided by any appointed substitute trustee, "any potential indorsement on the Note or allonge beyond the one made in blank," on the ground that "all acts from and after the first of any defective or insufficient such instrument are tainted" because there are "potentially fatal defects in

the chain of title" that support a "*bona fide* argument as to the validity" of these transactions.  Pl.'s Resp. Br. 5-6 (quoting *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1033 (8th Cir. 2012)) (citations to other legal authority omitted).  Ruiz, therefore, argues that he can challenge the "adequacy or effect of the Assignment of Deed of Trust" because it "was made by a person claiming to act under independent evidence of authority, but without evidence of such authority ever being offered [by Defendants]" and  "purportedly on behalf of an entity (MERS, for its own account, not as a nominee for a principal such as Shelter) that was at least one and possibly more steps removed from Defendant [BOA], the putative assignee, by the indorsement(s) that Defendants offer this Court." *Id.* at 6. Ruiz asserts that the Appointment of Substitute Trustee is similarly flawed because it was "made by a person claiming to act under independent evidence of authority—a power of attorney— but without evidence of such authority being offered in summary judgment evidence [by Defendants]." *Id.*

Ruiz further asserts that Morton's declaration establishes Defendants' lack of capacity to provide notice of his default because, while this evidence shows that Defendants attempted to comply with section 51.002(d) of the Texas Property Code, the notices were "made without clearly established capacity by the senders because of the questionable Assignment of Deed of Trust and the indorsement in blank of the Note as offered by Defendants."  Pl.'s Resp. Br. 4.  Ruiz contends that, although Morton states in his declaration that PennyMac holds the original Note, he does not indicate whether he ever has seen or examined the original Note for purposes of his being able to vouch for the authenticity of the original Note and other records, and PennyMac's possession of the original Note and records.

**Memorandum Opinion and Order - Page 13**

In addition, Ruiz contends that Defendants have not offered any evidence to explain why "the timing of the indorsement(s) of the Note[,] as compared to the date of the Assignment of the Deed of Trust, are not necessarily consistent with the indorsements on the Note." Pl.'s Resp. Br. 2. According to Plaintiff, "[w]ithout such summary judgment evidence to support the actors in the latter instruments, and without other documentation to establish a chain of assignment of the Loan to match the change of indorsement of the Note, there can be no certain claim that [BOA] is actually the mortgagee of record or that PennyMac can derive mortgage servicer status from [BOA] and be entitled to . . . attempt to enforce the lien" under the Deed of Trust. *Id.* at 2-3. Plaintiff, therefore, argues:

> Unless and until there is a showing [by Defendants] of clear authority for the signer of the Assignment of Deed of Trust to conform to the final Note indorsement (not just to the next-to-last, apparently to [BOA], then [BOA] is not clearly the last assignee, PennyMac could not be the mortgage servicer, and neither party offers proof of the power of attorney claimed in the Appointment of Substitute Trustee, naming the trustee who executed the Notice of Substitute Trustee's Sale.

*Id.* at 3.

Action taken in an attempt to foreclose on property without authority to do so can violate § 392.301(a)(8)'s prohibition against threats by a debt collector to take an action prohibited by law. *See McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 477-78 (5th Cir. 2015) (concluding that mortgagee violated section 392.301(a)(8) by threatening to foreclose after specifically waiving its right to do so). On the other hand, the TDCA "does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code Ann. § 392.301(b)(3). Non-judicial foreclosures in Texas are governed by Chapter 51 of the Texas Property Code, which authorizes either a mortgagee, or a mortgage servicer acting on behalf of a mortgagee, to sell real property under a "power of sale

conferred by a deed of trust." Tex. Prop. Code. Ann. §§ 51.002, 51.0025.  Section 51.002(4) of the Texas Property Code defines a mortgagee as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (C) if the security instrument has been assigned of record, the last person to whom the security interest has been assigned of record."[4]  Section 51.0025(3) defines "mortgage servicer" as "the last person to whom a mortgagor has been instructed by the current mortgage to send payments for the debt secured by a security instrument." MERS is defined in § 51.0001(1) of the Texas Property Code as a "book entry system." "Texas recognizes assignment of mortgages through MERS and its equivalents as valid and enforceable." *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 253 (5th Cir.2013).

Defendants' summary judgment evidence establishes that: (1) the Deed of Trust, dated July 30, 2003, secures the debt owed by Ruiz, as evidenced in the Note, and names MERS as the beneficiary and nominee of original lender Shelter Mortgage and Shelter Mortgage's successors and assigns; (2) under the terms of the Deed of Trust, MERS holds legal title to the interests granted in the Deed of Trust and has authority as nominee for Shelter Mortgage and Shelter Mortgage's successors and assigns to exercise "any and all of those interests, including but not limited to the right to foreclose and sell the Property," accelerate the debt owed upon Ruiz's default, and collect fees, charges, and interest;[5] (3) on May 9, 2012, MERS, in its capacity as the beneficiary and nominee for original lender Shelter Mortgage and Shelter Mortgage's successors and assigns under the Deed of Trust, dated July 30, 2003, transferred to BOA in a recorded assignment "all beneficial

---

[4] The term "[s]ecurity instrument" refers to "a deed of trust, mortgage, or other contract lien on an interest in real property." § 51.0025(6).

[5] Defs.' App. 109-112.

interest" in the Deed of Trust "together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue" under the Deed of Trust;[6] (3) Ruiz defaulted on his mortgage loan in October 2015 and never cured the default; (4) on October 12, 2016, BOA provided Ruiz with written notice that PennyMac would be servicing his loan starting November 1, 2016; (5) prior to this date, BOA serviced Ruiz's home mortgage loan, and Ruiz was notified in writing of this fact on July 15, 2016; (6) BOA, as mortgage servicer, provided Ruiz with a written Notice of Default and Intent to Accelerate on July 15, 2016; and (7) on July 26, 2018, PennyMac, as mortgage servicer, provided Ruiz with a written Notice of Acceleration and Notice of the Substitute Trustee Sale scheduled for October 2, 2018.

This evidence shows that BOA is the recorded assignee of the Deed of Trust, and Ruiz has not produced any evidence indicating that subsequent assignments of the Deed of Trust occurred. As the "last person" to whom the Deed of Trust was assigned,[7] BOA has the authority as mortgagee to exercise the power to foreclose on the Property and all related powers set forth in the Deed of Trust, and it had that authority when Ruiz was provided with notice of default, intent to accelerate, and the foreclosure sale. Defendants also presented evidence to show that BOA and PennyMac were mortgage servicers; that Ruiz was notified of this fact; and that they, in their capacity as mortgage servicers, provided him with the notice required by Texas law.[8] Ruiz does not point to any contrary

---

[6] Defs.' App. 119.

[7] Tex. Prop. Code Ann. § 51.002(4).

[8] Under Texas law, a debtor in default must be served with written notice of the default by certified mail and given at least 20 days to cure the default before notice of sale can be given under section 51.002(b). Tex. Prop. Code Ann. § 51.002(d). Under section 51.002(b), a debtor must be given notice of the foreclosure 21 days before the foreclosure sale.

**Memorandum Opinion and Order - Page 16**

evidence, and his contentions regarding "potentially fatal defects in the chain of title" and authority

of the persons who executed the Note and May 2012 Assignment of Deed of Trust are not evidence.[9]

Given Defendants' authority to foreclose on the Property under the Deed of Trust, Ruiz's

contentions regarding potential irregularities in the transfer of the Note or Note endorsements are

irrelevant, as Defendants were entitled to foreclose under the Deed of Trust without holding or

owning the original Note. *Martins*, 722 F.3d at 252, 254-55. Ruiz's contention that it is unclear

from Morton's declaration whether he has seen or examined the original Note, as opposed to copies,

---

[9] As noted, Ruiz maintains that Defendants' summary judgment evidence does "not negate any essential element of [his] claims" and fails to establish that they have the requisite capacity or authority to foreclose on the Property. Pl.'s Resp. 2 (Doc. 21); Pl.'s Resp. Br. 2-3 (Doc. 22). He similarly argues that Defendants have not come forward with sufficient evidence to establish their authority to foreclose on the Property because, among other things, they have not established the authority of the persons who executed the Note, Assignment of the Deed of Trust, or Appointment of Substitute Trustee. These assertions mischaracterize Defendants' summary judgment burden. Plaintiff, not Defendants, has the burden as the summary judgment nonmovant to identify evidence to raise a genuine dispute of material fact regarding his claims on which he will have the burden of proof at trial, and he cannot satisfy that burden by simply arguing that Defendants' evidence is insufficient. As aptly explained by the court in *Austin v. Kroger Texas, L.P.*:

> Under federal law, . . . it has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case. *See, e.g., Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) ("When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc) (noting that the party moving for summary judgment is not required to "negate the elements of the nonmovant's case," but may "satisfy [its] burden under *Celotex*" by "assert[ing the] absence of facts supporting the elements of the plaintiffs' theory of recovery").

864 F.3d 326, 335 (5th Cir. 2017). Defendants satisfied their burden as the summary judgment movant on Plaintiff's capacity-based claims by contending and coming forward with evidence establishing the absence of facts supporting the capacity element of Plaintiff's theory of recovery. The burden, therefore, shifted to Plaintiff to identify evidence to raise a genuine dispute of material fact regarding Defendants' authority or capacity for trial, which he has not done. Further, although Plaintiff's Original Petition is verified, and for purposes of summary judgment, "factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit," *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003), the allegations in Plaintiff's Original Petition are formulaic, conclusory, and unsubstantiated, and thus are insufficient to defeat a motion for summary judgment. *Eason*, 73 F.3d at 1325; *Forsyth*, 19 F.3d at 1533.

is immaterial for the same reason, and any argument based on "show-me-the-note" and "split-the-note" theories is foreclosed by Texas and Fifth Circuit authority.[10]  *Id.* at 254.  To the extent Ruiz contends that Morton's declaration should be excluded for lack of personal knowledge, this argument also fails. *See* Pl.'s Resp. Br. 3 ("The Declaration of [] Morton . . .  claims personal knowledge obtained by examination of records[.]"). The declaration states it is based on "personal knowledge of the facts"[11] referenced, including Morton's review of Ruiz's loan records maintained in the regular course of business by PennyMac; his position at PennyMac as Foreclosure Operations Supervisor makes him competent to testify regarding PennyMac's and BOA's relationship with Ruiz as it pertains to his loan; and Ruiz has produced no reason to doubt the veracity of his testimony. *See Rust v. Bank of America, N.A.*, 573 F. App'x 343, 345 (5th Cir. 2014) (per curiam) (citing *FDIC v. Selaiden Builders, Inc*., 973 F.2d 1249, 1254 n.12 (5th Cir.1992); and *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir.1992)).  Morton also states that the documents attached to his declaration are the "originals or exact duplicates of the originals."  Defs.' App. 3.  The court, therefore, determines that the declaration is competent summary judgment evidence and may be considered in ruling on Defendants' Motion.

Moreover, the court agrees with Defendants that Ruiz, as a nonparty to the May 2012 assignment of the Deed of Trust, does not have standing under Texas law to challenge the assignment on any ground that "merely renders [it] voidable at the election of the assignor," rather

---

[10]  Ruiz does not cite any legal authority in his response to Defendants' summary judgment, as required by this district's local civil rules, to support his contentions regarding Morton's declaration. Thus, the exact legal basis or bases for his contentions regarding Morton's declaration are not clear.

[11]  Defs.' App. 1-2.

than void. *Reinagel*, 735 F.3d at 225; *see also Morlock, L.L.C. v. Bank of New York*, 448 S.W.3d 514, 517 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citations omitted) (same); *Vasquez v. Deutsche Bank Nat'l Trust Co., N.A.*, 441 S.W.3d 783, 787 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (discussing *Reinagel* with approval). Lack of authority to enter an assignment of a deed of trust on behalf of a corporate principal is a voidable defect, not one that renders an assignment void. *Reinagel*, 735 F.3d at 226; *Morlock, L.L.C.*, 448 S.W.3d at 517. Similarly, alleged defects based on the timing of an assignment and indorsement and the authority of those who signed the assignment and indorsement merely render the assignment voidable at the election of the assignor, not void. *Alanis v. Wells Fargo Bank Nat'l Ass'n for Pooling & Servicing Agreement Dated as of October 1, 2006 Securitized Asset-Backed Receivables LLC Tr. 2006-NC3 Mortgage Pass-Through Certificates Series 2006NC3*, 04-17-00069-CV, 2018 WL 1610939, at *2 (Tex. App.—San Antonio Apr. 4, 2018, pet. denied). Accordingly, defects such as these relied on by Ruiz do not give him standing to challenge the validity of the Assignment of the Deed of Trust to which he is not a party.

The same reasoning applies to Plaintiff's capacity-based challenge to the Appointment of Substitute Trustee. As noted, Ruiz contends that there is no evidence that the Appointment of Substitute Trustee was signed by a person with authority. Pl.'s Resp. Br. 6 (arguing that the Appointment of Substitute Trustee was "made by a person claiming to act under independent evidence of authority—a power of attorney— but without evidence of such authority being offered in summary judgment evidence [by Defendants]." The Appointment of Substitute Trustee, however,

indicates that it was executed by Eric Prischtt ("Prischtt") as the "Authorized Representative"[12] of PennyMac, acting on behalf of BOA, and Ruiz points to no evidence that Prischtt lacked authority to act on behalf of PennyMac, that PennyMac lacked authority to act on behalf of BOA, or that Prischtt misrepresented the scope of his authority in executing the Appointment of Substitute Trustee. *See Reinagel*, 735 F.3d at 226. Thus, Ruiz's challenge to the Appointment of Substitute Trustee on this ground fares no better than his challenge to the 2012 Assignment of the Deed of Trust.

For all of these reasons, Defendants are entitled to judgment, as a matter of law, on all capacity-based claims asserted by Ruiz, which will be dismissed with prejudice.

### 3.      § 392.301(a)(8)

Defendants contend that they provided all required notices to Ruiz and had the authority to do so. Defendants further assert that, because it is undisputed that Ruiz defaulted on his loan and failed to cure the default, they were also entitled to accelerate the debt and foreclose on the Property. The court agrees. Defendants submitted evidence of the notices provided to Plaintiff, as well as evidence of his default and failure to cure the default.

Plaintiff does not point to any evidence to raise a genuine dispute of material fact to support his contention that Defendants violated section 392.301(a)(8) by failing to give notice required under sections 51.002(b) and (d) of the Texas Property Code. He, instead, relies solely on his capacity argument in response to Defendants' summary judgment motion. *See* Pl.'s Resp. Br. 8. The court

---

[12] Defs.' App. 122.

has already determined that Plaintiff's capacity-based arguments are insufficient and legally flawed. Accordingly, Defendants are entitled to judgment, as a matter of law, on Plaintiff's TDCA claim based on notice under section 392.301(a)(8) of the Texas Finance Code.

### 4.    § 392.303(a)(2)

Defendants contend that they did not violate Texas Finance Code § 392.303(a)(2) because they did not collect or attempt to collect improper interest or fees, and Plaintiff's allegations with respect to threatening foreclosure and "account[ing] for and "acknowledg[ing]" payments do not give rise to a claim under § 392.303(a)(2) because such conduct does not involve "collecting" or "attempting to collect interest or a charge, fee, or expense incidental" to Ruiz's loan.  Defs.' Summ. J. Br. 12 (citing *Walker v. Willow Bend Mortg. Co., LLC*, 3:18-CV-0666-D, 2019 WL 1569683, at *9 (N.D. Tex. Apr. 11, 2019), for the proposition that "[t]he court has not found, and [plaintiff] has not presented, any authority for the proposition that a foreclosure qualifies as 'interest or a charge, fee, or expense incidental to' a mortgage loan.").   In addition, Defendants maintain that the competent summary judgment evidence establishes that they "properly accounted for all payments on the Loan and that Plaintiff's Loan is due for the October 1, 2015 payment, which is what resulted in Defendants initiating foreclosure."  Defs.' Summ. J. Br. 12.

As before, Plaintiff does not attempt to refute Defendants' evidence.  Plaintiff, instead, responds as follows:

> Defendants['] issuing notices of sale either without (a) authority at the time, or (b) properly giving them to Plaintiff as required by TEXAS PROP. CODE [§§] 51.002(b) or (d), and charging the expense of such acts (or failures) to the Loan, supports claims under TEX. FIN. CODE § 392.303(a)(2). Plaintiff challenges the

> unlawful nature of such charges, since they were accrued to the Loan in threatening an unlawful sale and thus not directed to Plaintiff in a statutorily required manner. Discovery will establish exact amounts charged to the Loan in addition to those appearing in APP19-APP57.

Pl.'s Resp. Br. 8. This conclusory, unsubstantiated assertion is insufficient to raise a genuine dispute of material fact, and Plaintiff's argument regarding Defendants' lack of authority fails for the reasons already explained. Moreover, as noted, the Deed of Trust gives Defendants authority to collect fees, charges, and interest,[13] and it is undisputed that Plaintiff defaulted on his loan and failed to cure the default. Absent evidence that the charges alluded to by Plaintiff were not allowed under the Deed of Trust, it is immaterial whether he can establish the "exact amounts charged" if permitted to conduct discovery. Accordingly, Defendants are entitled to judgment, as a matter of law, on this claim, which will be dismissed with prejudice, as Plaintiff has failed to identify any evidence or authority that Defendants threatened to conduct an unlawful foreclosure sale or assessed, collected, or attempted to collect "sums in excess of those permitted under the Note and Deed of Trust" in violation of Texas Finance Code § 392.303(a)(2).

### 5.    § 392.304(a)(8) and (19)

Defendants argue that they are entitled to summary judgment on Plaintiff's claim under Texas Finance Code §§ 392.304(a)(8) and (19) because they properly applied payments to his loan and did not misrepresent the status of the loan. In this regard, Defendants contend:

> Plaintiff admits he failed to make payments on the Loan. *See* Ex. C-1, APP 100. Plaintiff defaulted on the Loan by failing to make payments. *See* Ex. A-2, APP 9-63.

---

[13] Defs.' App. 109-112.

>And Plaintiff has no evidence that Defendants failed to apply any payment he
>tendered. *See supra* IV.C.2. Further, none of the information contained in the
>notices of default or notices of acceleration was false, deceptive, or misleading. *See*
>Ex. A-3, APP 64-80. Nor has Plaintiff alleged misinformation in any of those
>communications. *See generally* Pl.'s Orig. Pet. As such, demanding those [alleged]
>amounts from Plaintiff did not violate Texas Finance Code § 392.304(a)(8) or (19).

Defs.' Summ. J. Br. 13-14.

>Plaintiff responds as follows:

>Defendants issuing notices of sale (a) without authority at the time, or (b) without
>properly giving them to Plaintiff in the form and manner required by TEXAS PROP.
>CODE [§] 51.002(b) or (d) were either or both inherently false and deceptive means
>of attempting to collect the Loan, and actionable under TEX. FIN. CODE §
>392.304(a)(8) and/or (19). Discovery will confirm the extent of each violation.

Pl.'s Resp. Br. 8. As explained, Plaintiff's authority or capacity argument is without merit.

Plaintiff's conclusory and unsupported contention that Defendants failed to give him adequate or

proper notice as required by sections 51.002(b) or (d) of the Texas Property Code is also insufficient

to raise a genuine dispute of material fact as to whether Defendants used fraudulent, deceptive, or

misleading representations that misrepresented "the character, extent, or amount" of Ruiz's debt

under the Note, § 392.304(a)(8), or attempted to collect on that debt through the use of a "false

representation or deceptive means to collect a debt." § 392.304(a)(19). Absent such evidence, the

"extent" or amount collected or attempted to be collected is quite beside the point. He also cites no

authority to show that inadequate notice under sections 51.002(b) or (d) is a viable basis to support

a TDCA claim under § 392.304(a)(8) or (19). Defendants are, therefore, entitled to judgment, as a

matter of law, on Plaintiff's claims under §§ 392.304(a)(8) and (19), which will be dismissed with

prejudice.

**Memorandum Opinion and Order - Page 23**

### D.        Declaratory Judgment and Injunctive Relief

Defendants next argue that Plaintiff's requests for declaratory and injunctive relief should

be dismissed because he has failed to state any viable causes of action. Plaintiff responds that he has

established a basis for both types of relief.

Although Ruiz filed this lawsuit in Texas state court, "[w]hen a declaratory judgment action

filed in state court is removed to federal court, that action is in effect converted into one brought

under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Turner v.*

*AmericaHomeKey Inc*., 3:11-CV-0860-D, 2011 WL 3606688, at *5 (N.D. Tex. Aug. 16, 2011)

(citations omitted).  Ruiz's request for relief under the Texas declaratory judgment statute is,

therefore, construed as a request for relief under the federal Declaratory Judgment Act, which

provides that any federal court may declare the rights and legal relations of any interested party. The

availability of a declaratory judgment under federal law, however, depends upon the existence of

an underlying judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).  Similarly,

injunctive relief [14] is not an independent cause of action, and, having determined that Defendants are

---

[14] Under federal law, there are four prerequisites for the extraordinary relief of a TRO or preliminary injunction.
A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial
> threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the
> movant] outweighs the threatened harm to the defendant; and (4) the granting of the [TRO or]
> preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572
(5th Cir. 1974) (en banc). The party seeking such relief must satisfy a cumulative burden of proving each of the four
elements enumerated before a TRO or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United
Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet any
of the four requirements, the court cannot grant the TRO or preliminary injunction.

entitled to judgment, as a matter of law, on all of Plaintiff's claims, he cannot satisfy all of the requirements for a TRO or preliminary injunction.  Accordingly, the court will deny Plaintiff's request for injunctive relief and dismiss with prejudice his request for a declaratory judgment.

### E.    Discovery

Plaintiff refers to "discovery" six times in his response to Defendants' Motion.  Federal Rule of Civil Procedure 56(d) provides that, when facts are unavailable to the summary judgment nonmovant and the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Rule 56(d) is "usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Union City Barge Line, Inc. v. Union Carbide Corp*., 823 F.2d 129, 136 (5th Cir. 1987).[15] The purpose of Rule 56(d), however, is not to permit the opponent of a summary judgment to complete discovery, as "Rule 56 does not require that discovery take place before granting summary judgment." *See McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991) (citation omitted). Thus, "[i]t not sufficient [for a summary judgment nonmovant] to allege that discovery is incomplete or that [discovery] will produce needed but unspecified facts." *Id*. at 1088. Rule 56(d), instead, provides a mechanism for relief when the nonmovant has diligently pursued discovery but has not

---

[15]    *Union City Barge Line, Incorporated* dealt with a continuance under prior Rule 56(f). The Advisory Committee Notes to the 2010 Amendment to Rule 56 indicate that subdivision (d) of Rule 56 "carries forward without substantial changes the provisions of former subdivision (f)."

had a full opportunity to conduct discovery needed to raise a genuine dispute of material fact in response to a summary judgment motion. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).

The party moving for a continuance under Rule 56(d) must, therefore, show why he needs the additional discovery and how the additional discovery will demonstrate that a genuine dispute of material fact exists to rebut the movant's grounds for summary judgment. *Stults v. Conoco, Inc.*, 76 F.3d 651, 657-58 (5th Cir. 1996) (citation omitted). In doing so, a party may not "rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006) (citation and quotation marks omitted). The party requesting the extension must also show that relevant discovery has been diligently pursued, as it is not incumbent on the district court to "aid non-movants who have occasioned their own predicament on sloth." *Wichita Falls Office Assocs.*, 978 F.2d at 919.

Ruiz does not specifically request an extension under Rule 56(d) to respond to Defendants' Motion for purposes of conducting additional discovery, and he has not submitted an affidavit or declaration as required by Rule 56(d).  After filing his summary judgment response on June 10, 2019, he did not seek to supplement the response, even though the October 4, 2019 deadline at that time for conducting discovery had not yet expired and was later continued on November 8, 2019, to January 10, 2020.  Ruiz also has not shown that he diligently pursued discovery before having to respond to Defendants' summary judgment motion.  Additionally, he has not explained how the discovery referenced in his summary judgment response will demonstrate that a genuine dispute of

**Memorandum Opinion and Order - Page 26**

material fact exists to rebut Defendants' grounds for summary judgment, and the court has already determined that some of the discovery referenced will not raise a genuine dispute of material fact. As previously noted, the precise amounts of charges that Plaintiff contends were improper is immaterial because Ruiz has failed to establish that the charges were improper under the Note or Deed of Trust.  Discovery for this purpose is, therefore, unnecessary.  Plaintiff also asserts that:

> Discovery is necessary to establish the existence or non-existence, for example, of any presently invisible succession of interest in the Note, and if there has been any such further transfer, then whether any statutorily sufficient notice was given to Plaintiff in the form and manner required [] by TEX. PROP. CODE §51.002(b) and/or (d), since all notices to date appear insufficient.

Pl.'s Resp. Br. 9.  The court, however, has determined that Plaintiff's contentions regarding capacity and the Note are irrelevant to Defendants' power to initiate a non-judicial foreclosure sale under the Deed of Trust.  Plaintiff's assertion that "all notices to date appear insufficient" is far too speculative.  Moreover, such information should have been within Plaintiff's knowledge and possession.

Accordingly, even construing Plaintiff's references to discovery as a request for continuance under Rule 56(d), the court determines that he has not established his entitlement to such a continuance for all of the foregoing reasons and, therefore, **denies** any such request.

## IV.    Conclusion

For the reasons explained, Defendants are entitled, as a matter of law, to judgment on all claims asserted by Plaintiff in this action, as Plaintiff has failed to raise a genuine dispute of material fact in response to the summary judgment grounds identified by Defendants.  The court, therefore,

**grants** Defendants' Motion for Summary Judgment (Doc. 15), **dismisses with prejudice** all claims by Plaintiff, and **denies** all requests for relief by him against Defendants in this action, including his cause of action for breach of contract, claim for violations of the Texas Property Code, claims for violations of the TDCA, request for declaratory judgment, and request for injunctive relief. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

   **It is so ordered** this 30th day of April, 2020.

Sam A. Lindsay
United States District Judge